The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| FRANCESCA GARDINIERE,<br><br>                              Plaintiff,<br><br>          vs.<br><br>FRANCISCAN HEALTH SYSTEM, d/b/a<br>CHI FRANCISCAN ST. ANTHONY<br>HOSPITAL a Washington Public Benefit<br>Corporation,<br><br>                              Defendant. | Case No.: 3:19-cv-05610-RJB-MAT |

## DEFENDANT, FRANCISCAN HEALTH SYSTEM'S
## MOTION FOR SUMMARY JUDGMENT

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................3

I.      INTRODUCTION .................................................................................................6

II.     STANDARD OF REVIEW ....................................................................................6

III.    STATEMENT OF FACTS NOT IN DISPUTE ......................................................7

IV.     ARGUMENT .......................................................................................................14

      A.      Title VII Does Not Protect Against Disability Discrimination.......................15

      B.      Plaintiff Did Not Exhaust Administrative Remedies With Respect to Any
            PTSD-Based Claims. .....................................................................................15

      C.      Plaintiff Failed to Participate in the Interactive Process. ...............................17

      D.      Plaintiff's Request to Transfer Shifts in Order to Work for New
            Supervisors was Not a Request for a Reasonable Accommodation Under
            ADA or WLAD. .............................................................................................19

      E.      Plaintiff Admitted Any Harassment Was Not Based On Her Alleged
            PTSD Disability. ...........................................................................................21

      F.      There is No Dispute of Fact Plaintiff Received All of the Pregnancy
            Accommodations She Requested......................................................................25

      G.      Plaintiff's Negligent Supervision and Training Claim Does Not Present
            Actions Outside the Scope of Any Franciscan Employee's Employment....................28

V.      CONCLUSION....................................................................................................30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Allen v. Pac. Bell*,
   348 F.3d 1113 (9th Cir. 2003) ........................................................ 19

*B.K.B. v. Maui Police Dept.*,
   276 F.3d 1091 (9th Cir. 2002) .................................................... 15, 16

*Blackman v. Omak School Dist.*,
   2:18-CV-0338, 2020 WL 3105089 (E.D. Wash. Jun. 11, 2020) .................... 19, 20

*Blanchard v. LaHood*,
   461 Fed. Appx. 542 (9th Cir. 2011) ................................................ 18

*Davis v. Icicle Seafoods, Inc.*,
   07-1565, 2008 WL 4189378 (W.D. Wash. Sept. 5, 2008) ............................. 6

*Garcia v. Salvation Army*,
   918 F.3d 997 (9th Cir. 2019) ...................................................... 18

*Gaul v. Lucent Tech., Inc.*,
   134 F.3d 576 (3d Cir. 1998) ....................................................... 20

*Giudice v. Red Robin Int'l, Inc.*,
   555 Fed. Appx. 67 (2d Cir. 2014) .................................................. 24

*Goos v. Shell Oil Co.*,
   451 Fed. Appx. 700 (9th Cir. 2001) ................................................ 18

*Green v. Los Angeles Cty. Superintendent of Schools*,
   883 F.2d 1472 (9th Cir. 1989) ..................................................... 15

*Headspace Int'l LLC v. Podworks Corp.*,
   5 W'n. App. 2d 883 (2018) ......................................................... 27

*Houk v. Best Dev. & Const. Co., Inc.*,
   179 W'n. App. 908 (2014) .......................................................... 27

*Hunter v. Home Depot U.S.A., Inc.*,
   270 Fed. Appx. 654 (9th Cir. 2008) ................................................ 25

*Johnson v. Boeing Co.*,
   C17-0706, 2017 WL 5458404 (W.D. Wash. Nov. 13, 2017) .......................... 28, 29

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3
(Case No.: 3:19-cv-05610-MAT)

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

*Linder v. Potter*,
  CV-05-0062, 2009 WL 2595552 (E.D. Wash. Aug. 18, 2009) ............................................. 24

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...................................................................................................... 6

*McDaniels v. Group Health Co-op.*, 57 F. Supp. 3d 1300 (W.D. Wash. 2014) ......................... 28

*Moody v. Cty. of San Mateo*,
  405 Fed. Appx. 250 (9th Cir. 2010)................................................................................... 27

*Morgan v. U.S. Soccer Fed., Inc.*,
  445 F. Supp. 3d 635 (C.D. Cal. 2020) ............................................................................... 15

*Pablico-Stovall v. Univ. of Cal.-San Francisco*, C 03-5836, 2004 WL 443794 (N.D. Cal. Mar. 8, 2004) ............................................................................................................................ 15

*Peck v. Siau*,
  65 W'n. App. 285 (1992) ................................................................................................. 28

*Robel v. Roundup Corp.*,
  148 W'n. 2d 35 (2002) (en banc) ...................................................................................... 24

*Roberts v. Kaiser Found. Hosp.*,
  2:12-cv-2506, 2015 WL 545999 (E.D. Cal. Feb. 10, 2015), *aff'd sub nom*, 690 Fed. Appx. 535 (9th Cir. 2017).......................................................................................................... 21

*Snyder v. Med. Serv. Corp. of E. Wash.*,
  145 W'n. 2d 233 (2001) (en banc) .................................................................................... 20

*State v. Greenwood*,
  120 W'n. 2d 585 (1993) (en banc) .................................................................................... 27

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ............................................................................................ 6

*Weiler v. Household Fin. Corp.*,
  101 F.3d 519 (7th Cir. 1996) ........................................................................................... 21

*Wynes v. Kaiser Permanente Hosps.*,
  936 F. Supp. 2d 1171 (E.D. Cal. 2013).............................................................................. 24

**Statutes**

42 U.S.C. § 2000e-2.................................................................................................. 15

Rev. Code Wash. Ann. § 43.10.005................................................................... 26, 27

**Other Authorities**

2019 Wash. Legis. Serv. Ch. 134 (S.H.B. No. 1930) ....................................... 27

*Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA*,
   October 17, 2002.......................................................................................... 21

Wash. Admin. Code § 357-26-045 ..................................................................... 26

**Rules**

Fed. R. Civ. Proc. 56.............................................................................................. 6

## I.    INTRODUCTION

Plaintiff was employed by Defendant Franciscan Health System ("Franciscan") from October 2017 until December 2019, during which time Franciscan continually provided Plaintiff with accommodations. Indeed, Plaintiff was on leave for nearly half of her employment.  Her claims in this action concern other alleged requests for accommodations for a pregnancy and a PTSD condition.  As demonstrated by the undisputed factual record, to the extent a requested accommodation was not immediately provided, Plaintiff actually did not make the alleged request in the manner now alleged – or refused to cooperate in the interactive process.  The uncontroverted evidence demonstrates Plaintiff's claims are not legally viable, and Franciscan respectfully requests that the Court enter summary judgment in its favor.

## II.    STANDARD OF REVIEW

Franciscan is entitled to summary judgment if "there is no genuine dispute as to any material fact and [Franciscan] is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  There is no genuine issue of fact for trial "where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party."  *Davis v. Icicle Seafoods, Inc.*, No. 07-1565, 2008 WL 4189378, at *2  (W.D. Wash. Sept. 5, 2008).  Plaintiff must put forward "specific, significant probative evidence, not simply 'some metaphysical doubt'" in order to create a dispute of fact.  *Id*. (quoting *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed."  *Id*. at *3.  Even a disputed fact is not "material," so as to preclude summary judgment, unless it is one "whose existence might affect the outcome of the suit" as "determined by the substantive law governing the claim or defense."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

III.    STATEMENT OF FACTS NOT IN DISPUTE

Franciscan hired Plaintiff on October 2, 2017 as an Emergency Department Technician ("ED Tech") at St. Anthony's Hospital.  Franciscan knew Plaintiff was pregnant at the time she was hired.  (Ex. B, J. Barfield Decl. ¶ 4).[1]   At the time of hire, Plaintiff represented to Franciscan that she did not "have a disability that requires accommodation."  (Ex. D, V. Lackman Decl. ¶ 3, Tab 1, Employee Health Questionnaire)

On November 17, 2017, Plaintiff emailed her then-manager, Jennifer Barfield, and asked, in full: "Could I pick up HUC[2] shifts?"  (Ex. B, J. Barfield Decl. ¶¶ 5-6, Tab 1)  Plaintiff sought to perform these HUC shifts as "overtime" in addition to her existing job as an ED Tech.  (*See* Ex. F, Plaintiff's Interrogatory Answer 8, claiming as damages "missed overtime pay for HUC positions").  Because the November 17, 2017 email did not reference any connection between Plaintiff's desire to "pick up HUC shifts" and her pregnancy, or even mention her pregnancy, Barfield did not initially understand the email to be a request for an accommodation, much less a pregnancy or disability accommodation.  (Ex. B, J. Barfield Decl. ¶ 6)

Ultimately, however, Plaintiff was "told [she] had to provide an official doctor's note regarding the accommodations."  (Ex. A, Pl. Depo. 127:3-12, Depo. Ex. 13, EEOC Charge of November 15, 2018)  Franciscan's Accommodations Policy provided that "[a]n individual may be required to provide medical documentation of the disability and a health care professional's certification of the need for reasonable accommodation."  (Ex. D, V. Lackman Decl. ¶ 4, Tab 2 at I. D.)  Under Franciscan's policy it is the employee's responsibility to ensure that "[a]ny

[1] All testimony of Franciscan employees is submitted via declaration as Plaintiff took no depositions in this matter.
[2] HUC is an acronym for "Health Unit Coordinator."

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7
(Case No.: 3:19-cv-05610-MAT)

requested medical certification must be obtained and provided in a timely manner and include the necessary information for a determination to be made." (*Id*. at 3)

Plaintiff provided a doctor's note to Franciscan on February 14, 2018. (Ex. A, Pl. Depo. 114:18-115:15, 116:11-15, Depo. Ex. 13, "I provided the note as required . . . which was finally confirmed received on February 14, 2018.") That note advised, "[i]t is our recommendation that pt does not work more than eight hours shift per day." (Ex. A, Pl. Depo. 115:6-15, Depo. Ex. 9) After Plaintiff submitted the note, Franciscan provided her the accommodation it requested, namely that she "not work more than eight hours shift per day." (*Id*.; Ex. A, Pl. Depo. 118:15-18) The February 14, 2018 doctor's note does not say anything about working in an HUC position. (*Id*.) Franciscan did not receive any other doctor's note from Plaintiff between November 17, 2017 and February 14, 2018. (Ex. D, V. Lackman Decl. ¶ 5; Ex. B, J. Barfield Decl. ¶ 7) Plaintiff testified she never provided a doctor's note for the HUC position:

> Q:    And just to be – for purposes of clarity, you did not provide a doctor's note to St. Anthony saying that you needed a change in position as related to your pregnancy; is that correct?
>
> . . . .
>
> A:    I did not.

(Ex. A, Pl. Depo. 238:8-14)

Plaintiff went on maternity leave from February 28, 2018 through May 7, 2018. (Ex. A, Pl. Depo. 44:18-20, 45:9-12) Shortly before Plaintiff began her leave, Sheila Niven became the Emergency Department Clinical Manager. (Ex. E, S. Niven Decl. ¶¶ 3, 5) When Plaintiff returned, Niven observed several deficiencies in Plaintiff's performance. (*Id*. ¶ 8) Under Franciscan's policies, different clinical positions must wear different colored scrubs so that each clinician's role can readily be determined by visual confirmation. (*Id*. ¶ 9, Tab. 1, Why Do We

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8
(Case No.: 3:19-cv-05610-MAT)

Wear Color Standardized Work Attire document)[3]  On May 14, 2018, Niven counseled Plaintiff because Plaintiff wore scrubs that were not the proper color for Plaintiff's ED Tech position under Franciscan's policy.  (Ex. E, S. Niven Decl. ¶ 10, Tab 2, 05.14.18 Coaching Record)  After Plaintiff's return from maternity leave, Niven observed, and was also informed by nurses, that Plaintiff was not displaying urgency in her work when ambulances arrived or the department became busy.  (*Id*. ¶ 11)  On May 18, 2018, Niven coached Plaintiff about the need to expedite patient care when the Emergency Department was busy.  (*Id*. ¶¶ 11, Tab 3, 05.18.18 Coaching Record)  On the same day, Niven was told by a charge nurse that Plaintiff left for a break without notifying the charge nurse and was not reachable by her walkie-talkie during the break, and again provided coaching to Plaintiff.  (*Id*. ¶¶ 12, Tab 4, 05.18.18 Coaching Record)

Niven determined there were two ED Techs who would benefit from being reoriented to her expectations, Plaintiff and a male ED Tech.  (*Id*. ¶ 13) After obtaining Human Resources's approval, Niven directed both to participate in a one-day reorientation session.  (*Id*.)  Plaintiff testified she had no complaints about being reoriented.  (Ex. A, Pl. Depo. 149:5-10).

Like all ED Techs, Plaintiff was required to complete Employee Health and Employee Learning new hire requirements as part of her onboarding process.  (Ex. C, S. Georgette Decl. ¶ 4) When she began maternity leave on February 28, 2018, Plaintiff had not completed her tuberculosis testing and online "LEARN" training obligations, which had been due by January 2, 2018.  (*Id*. ¶¶ 4-5) After Plaintiff returned from leave, Niven met with her on May 16, 2018 to discuss the outstanding requirements, but Plaintiff still did not complete them.  (Ex. E, S. Niven Decl. ¶¶ 6-7)   Accordingly, Plaintiff was suspended from May 21 to June 1, 2018 for

---

[3] Notably, Plaintiff does not consider the color of scrubs to be of importance.  (Ex. A, Pl. Depo. 144:13-18)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

noncompliance with her new hire requirements   (Ex. C, S. Georgette Decl. ¶ 7)   Between Plaintiff's date of hire and December 31, 2019, at least seven other Franciscan employees were similarly suspended for failing to complete Employee Health or Employee Learning obligations. (*Id*.)   Although Plaintiff was initially suspended without pay, Franciscan ultimately paid her for the period of May 21 to June 1, 2018.   (Ex. D, V. Lackman Decl. ¶ 10, Tab 6, Ex. A, Pl. Depo. 247:17-21)

Plaintiff claims that after she returned from maternity leave, Emma Kasemeier, a charge nurse, and Trina Castellanos, a supervisor, refused to allow her to take breaks to pump breastmilk, use the bathroom, or eat.   (Ex. A, Pl. Depo. 240:15-241:6) Plaintiff also alleges that after she returned from leave, Kasemeier and Castellanos "would frequently talk down and bad about [Plaintiff] in front of other co-workers and patients in the hospital."   (*Id*. 243:1-13) Plaintiff also claimed that "[r]ight after I got back from maternity leave," Michael Beard, an ED Tech, "would constantly harass me about wanting my position, getting angry that I wouldn't give it to him and switch, back me in the corner" and would "bad-mouth me."   (*Id*. 246:6-18)

By August 2018, Niven had received complaints from numerous other employees about Plaintiff, including that she did not answer calls from charge nurses, improperly filled out trauma checklists, and frequently had outbursts at other employees.   (Ex. E, S. Niven Decl. ¶ 14)   On August 14, 2018, Niven and Human Resources Manager Stacy Georgette held a meeting with Plaintiff.   (*Id*.; Ex. C, S. Georgette Decl. ¶ 8)   During the meeting, Georgette found Plaintiff's comments offensive and observed Plaintiff to be unable to productively communicate or talk through the concerns shared by Niven and Georgette. (Ex. C, S. Georgette Decl. ¶ 9)   Plaintiff also shared her own concerns, and was offered the option of paid leave while Franciscan investigated her concerns.   (Ex. A, Pl. Depo. at 45:17-22, 174:6-11, "I recall them asking me if I

1   wanted to take a leave to investigate some things that I was concerned about.")  Following the

2   meeting, Plaintiff took paid administrative leave from August 14, 2018 to September 14, 2018.

3   (*Id.* at 45:13-25).  After her return, Niven continued to receive complaints about Plaintiff from

4   other employees.  (Ex. E, S. Niven. Decl. ¶ 15)

5          Later that same day, August 14, 2018, Plaintiff contacted the Equal Employment

6   Opportunity Commission ("EEOC") by telephone.  (Ex. A, Pl. Depo. 102:22-24, 103:21-24,

7   105:23-106:7) The EEOC has an Inquiry Document that Plaintiff reviewed, and confirmed

8   accurately reflects the substance of that August 14, 2018 call.  (*Id.* 103:6-9, 106:11-15, Depo. Ex.

9   7, EEOC Inquiry) The Inquiry Document indicates that Plaintiff did not have any disability.  (*Id.*)

10         On October 26, 2018, Plaintiff's attorney wrote to the EEOC, referencing the earlier

11  Inquiry number, and submitted an intake questionnaire, which Plaintiff intended would "stand as

12  a charge of discrimination, if necessary."  (Ex. A, Pl. Depo. 110:6-9, Depo. Ex. 8) Plaintiff

13  reviewed the information in the Intake Questionnaire before signing it before a notary public.

14  (*Id.* 110:6-9) In the "Personal Information" section, Plaintiff checked "No" in response to the

15  question "Do You Have a Disability?"  (*Id.* at 110:10-15, Depo. Ex. 8 at 2)  In Section 9 of the

16  Intake Questionnaire, in response to the directive to "Please check all that apply," Plaintiff did

17  not check "Yes, I have a disability" or "I do not have a disability now but I did have one,"

18  instead checking only the third option, "**No disability** but the organization treats me as if I am

19  disabled." (*Id.*, Depo. Ex. 8 at 4, emphasis added).  Plaintiff expressed that the disability that she

20  "believe[d] [was] the reason for the adverse action taken against [her]" was "recovery from

21  surgery," (*id.*), which referred to the C-section procedure she underwent when she gave birth in

22  March 2018.  (Ex. A, Pl. Depo. at 110:16-18)  In a typewritten narrative describing her alleged

23  disability claim, Plaintiff recited a litany of alleged mistreatment including her request to work in

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11
(Case No.: 3:19-cv-05610-MAT)

the HUC position while pregnant and alleged harassment by Niven following her return from maternity leave, including the March 2018 coaching for wearing the wrong color of scrubs and the August 14, 2018 meeting.  (*Id.*, Depo. Ex. 8 at 6-7)  The Intake Questionnaire does not mention or assert any allegation based upon any PTSD condition.  (*Id.*, Depo. Ex. 8)

On November 15, 2018, Plaintiff submitted a formal Charge of Discrimination ("2018 Charge").  (Ex. A, Pl. Depo. 127:3-12, Depo. Ex. 13)  The 2018 Charge asserts that Plaintiff had been discriminated against from October 1, 2017 through November 15, 2018.  (*Id.* at 1)  The narrative description in the 2018 Charge was nearly identical to that of the prior Intake Questionnaire and did not assert any claims based on PTSD.  (*Id.*)

On November 27, 2018, Plaintiff submitted a request for medical leave under the Family and Medical Leave Act ("FMLA") to Franciscan.  (Ex. D, V. Lackman Decl. ¶ 6, Tab 3, 11.27.18 Certification)  In her FMLA request, Plaintiff included a statement from her health care provider requesting leave for a condition of "depression with anxiety, panic attacks, stress reaction."  (*Id.* at 4)  Plaintiff's health care provider certified that Plaintiff was diagnosed with this condition on August 29, 2018.  (*Id.*; *also* Ex. A, Pl. Depo. 242:5-8, "Q: And when do you believe you were diagnosed with PTSD? A: Well, it's when the doctor had written the note and I had given it to management, HR.")  Franciscan approved Plaintiff's FMLA leave request.  (ECF No. 1 at ¶ 3.3, "Plaintiff has been using intermittent FMLA leave for PTSD.")

On February 28, 2019, Plaintiff emailed Market HR Director Vickie Lackman to request "to be switched to night shift either an Emergency Department Technician position or Health Unit Coordinator position" as "accomadations [*sic*] for my disability."  (Ex. A, Pl. Depo. 155:25-156:5, Depo. Ex. 15) Plaintiff also submitted a note from her health care provider.  *Id.*   (Ex. D, V. Lackman Decl. ¶ 7, Tab 4, 02.21.19 Letter)  The note stated that Plaintiff "has been seen by

myself for anxiety, depression, PTSD and panic attacks due to her work situation," but did not address how these conditions affected Plaintiff's ability to perform the essential functions of her job or what accommodations might permit Plaintiff to perform those essential functions. (*Id.*)

Lackman responded the same day and, in accordance with Franciscan's accommodations policy forwarded Plaintiff "a release for you to sign in order for us to get clarifying information from your provider." (Ex. A, F. Pl. Depo. 156:12-15, 157:10-15, Depo. Exs. 15-16) On March 1, 2019, Plaintiff executed the authorization for her health care provider to release certain medical information. (*Id.* 157:10-15, Depo. Ex. 16) Later that day, however, Plaintiff revoked the medical release, stating that "[m]y attorney is asking that you give a written outline of what you will be asking for first before I sign." (Ex. D, V. Lackman Decl. ¶ 8, Tab 5)

On the next business day, March 4, 2019, Lackman responded to Plaintiff's revocation and clarified the limited medical information Franciscan needed:

> We send the job description and ask the provider to identify which essential functions they believe are affected by the condition you are requesting a medical accommodation for. We ask them to identify what accommodations they believe would assist with meeting the essential functions. We ask how long they believe an accommodation will be necessary.
>
> . . . .
>
> We do not ask for copies of medical files and any other medical information that is not related to the accommodation request.

(Ex. D, V. Lackman Decl. ¶ 9, Tab 6) Plaintiff responded: "The job funcrionsare [*sic*] not necessarily the issue it is working with Trina. Jennifer. Sheila." (*Id.*)

On March 6, 2019, still not having received authorization from Plaintiff, Lackman followed-up, stating: "I am very willing to work with you on your medical accommodation request. We have a process to follow regarding accommodation requests. Just let me know if you decide to move forward on it." (Ex. D, V. Lackman Decl. ¶ 10, Tab 7) On March 12, 2019,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13
(Case No.: 3:19-cv-05610-MAT)

Plaintiff responded and continued to refuse to authorize Lackman to speak with her health care provider. (*Id.*)  Plaintiff never provided the required authorization to permit Plaintiff's health care provider to disclose information to Franciscan to assist Franciscan in evaluating Plaintiff's accommodation request.  (Ex. D, V. Lackman Decl. ¶ 11; Ex. A, Pl. Depo. 158:5-8)

On June 4, 2019, Plaintiff filed her Complaint in this action.  (ECF No. 1)  On June 7, 2019, Plaintiff notified Franciscan that she allegedly suffered a work-related back injury on April 12, 2019 that would impose substantial physical work restrictions on her through August 1, 2019.  (Ex. A, Pl. Depo. 19:2-5, Depo. Ex. 1, Activity Prescription Forms) These restrictions were extended through October 1, 2019 and then January 1, 2020.  (*Id.*) Plaintiff did not perform any work for Franciscan after June 7, 2019.  (Ex. A, Pl. Depo. 17:3-5)  Because Plaintiff exhausted all of her FMLA and other leave and could not present a definite return to work date, Franciscan terminated her employment on December 9, 2019.  (Ex. D, V. Lackman Decl. ¶ 12)

## IV.    ARGUMENT

Plaintiff asserts four counts in her Complaint.  Count I is a combined Title VII and Washington Law Against Discrimination ("WLAD") claim for discrimination on the basis of Plaintiff's PTSD, which Plaintiff claims is a disability.  Count II is a claim under the Americans with Disabilities Act ("ADA") for disability discrimination, also based on PTSD.  Count III is a claim for Franciscan's alleged failure to provide pregnancy accommodations under the Washington Workplace Pregnancy Accommodations Law ("WPAL").  Count IV is a common law claim for negligent supervision and training.  The undisputed record in this case shows that all of these claims fail as a matter of law and Franciscan is entitled to summary judgment.

A.      Title VII Does Not Protect Against Disability Discrimination.

The Court can readily find Franciscan is entitled to judgment on Plaintiff's Title VII claim in Count I.  Disability is not a protected class under Title VII.  42 U.S.C. § 2000e-2(a)(1) (describing protected classes as "race, color, religion, sex, or national origin").

B.      Plaintiff Did Not Exhaust Administrative Remedies With Respect to Any PTSD-Based Claims.

Franciscan is entitled to summary judgment on Plaintiff's PTSD-based disability claims under Title VII in Count I and under the ADA in Count II because Plaintiff did not exhaust her administrative remedies with respect to those claims.  Although Plaintiff submitted her 2018 Charge to the EEOC, the 2018 Charge did not mention PTSD, predated both Plaintiff's disclosure of her PTSD to Franciscan and her later request for accommodations, and described only claims arising from Plaintiff's pregnancy, which is not the subject of Counts I or II.

Plaintiff was required to exhaust her administrative remedies before the EEOC or an equivalent state agency as a precondition to bringing her Title VII or ADA claims.  *Morgan v. U.S. Soccer Fed., Inc.*, 445 F. Supp. 3d 635, 658 (C.D. Cal. 2020) (Title VII); *Pablico-Stovall v. Univ. of Cal.-San Francisco*, C 03-5836, 2004 WL 445794, at *2 (N.D. Cal. Mar. 8, 2004) (ADA).   Where, as here, the allegations Plaintiff asserts in litigation are different from those in the 2018 Charge, the new allegations "may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'"  *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1101 (9th Cir. 2002)  (quoting *Green v. Los Angeles Cty. Superintendent of Schools*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)).   In analyzing Plaintiff's new PTSD claim against the claim asserted in her 2018 Charge, the Court looks to "such factors as the alleged basis of the discrimination, dates of the discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15
(Case No.: 3:19-cv-05610-MAT)

discrimination is alleged to have occurred." *Id.* Plaintiff's new claims cannot satisfy this standard.

Unlike her new PTSD claims, Plaintiff's 2018 Charge, as well as her EEOC intake documents, attested that Plaintiff was ***not*** disabled. (Ex. A, Depo. Exs. 7, 8, 13) Instead, Plaintiff claimed that she was "regarded as" disabled based on her recovery from her C-section surgery following her pregnancy. (Ex. A, Depo. Ex. 8, Questionnaire at p. 3, nos. 9-11) Accordingly, the new claims in Counts I and II involved altogether different types of disability discrimination (actual disability vs. "regarded as"), based on unrelated conditions (PTSD vs. C-section surgery), and are not "like or reasonably related" to the claims in the 2018 Charge. EEOC could not be "reasonably expected" to investigate claims that Plaintiff was discriminated against because of a PTSD disability when Plaintiff told EEOC that she did not have any disability but was merely recovering from surgery related to her pregnancy. *See B.K.B.*, 276 F.3d at 1101.

The time periods at issue are also dissimilar. The 2018 Charge alleged that the pregnancy/surgery based discrimination took place between October 1, 2017 and November 15, 2018. (Ex. A, Pl. Depo. Ex. 13) The last event described in the 2018 Charge took place on August 14, 2018. (*Id*. at 2) Plaintiff was not diagnosed with her stress/anxiety condition until August 29, 2018, and did not notify Franciscan of it until November 27, 2018 when she requested FMLA leave. (Ex. A, Pl. Depo. at 242:5-8) Accordingly, none of the events described in the 2018 Charge took place at a time when Plaintiff had been diagnosed with PTSD or any similar condition. The PTSD accommodations that Counts I and II complain of were not requested until February 28, 2019, three months *after* she filed her 2018 Charge. The complete lack of any temporal overlap between Plaintiff's new PTSD claims and the allegations in her Charge only support a finding that Plaintiff failed to exhaust administrative remedies.

Finally, the two claims involve different actors.  The only alleged "bad actor" identified in the 2018 Charge is Sheila Niven.  (Ex. A, Depo. Ex. 13)  Plaintiff identified a multitude of additional Franciscan employees – Emma Kasemeier, Trina Castellanos, Michael Beard, Jennifer Barfield, and Daniel Holycross – as having discriminated or harassed her on the basis of her alleged PTSD disability.  (Ex. A, Pl.  Depo. 242:5-248:3)  None of these individuals are identified in the 2018 Charge.  (Ex. A, Depo. Ex. 13)

Accordingly, the pregnancy-based theory set forth in the 2018 Charge is altogether different from the alleged PTSD discrimination in Counts I and II.  They involve different theories of disability discrimination, different timeframes, different actors, and different actions with no overlap.  Under these circumstances, the Court must rule as a matter of law that Plaintiff failed to exhaust her administrative remedies as to all PTSD claims under the ADA.

C.      Plaintiff Failed to Participate in the Interactive Process.

Franciscan is also entitled to summary judgment with respect to Plaintiff's ADA and WLAD claims in Counts I and II because it is undisputed that Plaintiff bears the entire responsibility for the breakdown of the "interactive process" with respect to her February 28, 2019 requests for reasonable accommodations for her PTSD.

Plaintiff requested accommodations in the form of a transfer to the night shift or to an HUC position by email on February 28, 2019.  (Ex. A, Depo. Ex. 15)   As support, Plaintiff provided a note from her health care provider dated February 21, 2019 that stated the provider was treating Plaintiff, but did not state that Plaintiff needed any workplace accommodations, much less the ones she requested.[4]  (Ex. D, Lackman Decl. ¶ 7, Tab 4)  Pursuant to Franciscan's

---

[4] Indeed, the February 21, 2019 provider note does not establish, and Plaintiff has no other evidence to meet, the threshold requirement that her PTSD was an ADA or WLAD "disability"

policy, Lackman requested that Plaintiff execute a release for Lackman to communicate with Plaintiff's health care provider about the accommodation request. (Ex. A, Depo. Ex. 15) The release authorized the disclosure of limited information directly necessary to evaluate Plaintiff's request, and Lackman explained the limited use that would be made of any information obtained. (Ex. D, Lackman Decl. ¶ 9, Tab 6; Ex. A, Depo. Ex. 16) Although Plaintiff initially executed the release, she revoked her execution within hours (at the guidance of her counsel) and thereafter refused to execute a release despite follow-up from Lackman. (Ex. A, Pl. Depo. 158:5-8)

Under ADA and WLAD, Plaintiff's request for accommodations triggered an interactive process that required "*both* the employer *and* the employee to engage in good faith in order to clarify what the individual needs and identify the appropriate accommodation." *Goos v. Shell Oil Co.*, 451 Fed. Appx. 700, 702 (9th Cir. 2001) (emphasis in original). Where the interactive process is unsuccessful in delivering a reasonable accommodation the Court must "attempt to isolate the cause of the breakdown and assign responsibility so that liability ensues only where the employer bears responsibility for the breakdown." *Id.*

Here, it is undisputed that Plaintiff bears the entire responsibility for any breakdown in the interactive process. Franciscan asked Plaintiff to authorize limited communication with her medical provider in order to evaluate her request, but Plaintiff flatly refused. Under similar circumstances, the Ninth Circuit recently held that the employer "was not required to continue an interactive process in the absence of medical evidence." *Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019); *Blanchard v. LaHood*, 461 Fed. Appx. 542, 544 (9th Cir. 2011)

because it only states she is being treated and does not show how, if at all, the condition affects her. 42 U.S.C. § 12102(1)(A) (ADA disability is an impairment that "substantially limits one or more major life activities"); Rev. Code Wash. Ann. § 49.60.040(7)(d)(i) (WLAD disability must "have a substantially limiting effect on the individual's ability to perform his or her job").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18
(Case No.: 3:19-cv-05610-MAT)

(affirming summary judgment where employee "declined to provide additional information about her medical condition upon request"); *Allen v. Pac. Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003) (noting that employee "was requested, but failed, to submit additional medical evidence" and "Pacific Bell did not have a duty under the ADA . . . to engage in further interactive processes . . . in the absence of any such information"); *Goos*, 451 Fed. Appx. at 702 (employee responsible for breakdown in interactive process where she precluded her physician from disclosing information to employer).  The same is true under WLAD.  *See Blackman v. Omak School Dist.*, 2:18-CV-0338, 2020 WL 3105089, at *11 (E.D. Wash. Jun. 11, 2020) (employee "retains a duty to cooperate with the employer's efforts by explaining her disability and qualifications" and cannot "fail[] to provide a medical nexus between the disability and the need for accommodation").

Plaintiff unilaterally refused to follow Franciscan's policies or engage in the interactive process.  No reasonable trier of fact could find that the provider note that Plaintiff submitted – which did not discuss limitations or accommodations – adequately informed Franciscan that Plaintiff needed her requested accommodations, especially where Plaintiff herself disclaimed that the accommodations were related to her performance of the essential functions of her job.  Accordingly, Franciscan is entitled to summary judgment on Counts I and II.

D. <u>Plaintiff's Request to Transfer Shifts in Order to Work for New Supervisors was Not a Request for a Reasonable Accommodation Under ADA or WLAD.</u>

Franciscan is also entitled to summary judgment on Plaintiff's ADA and WLAD claims because Plaintiff admitted, both contemporaneously and in her deposition, that the purpose of her February 28, 2019 accommodation request was to obtain new supervisors, not to enable her to perform the essential functions of her position.  Under Washington and federal law, an employer is not required to provide an employee a new supervisor as a reasonable accommodation.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19
(Case No.: 3:19-cv-05610-MAT)

As noted above, in response to Plaintiff's request to transfer to the night shift in either an ED Tech or HUC position, Lackman told Plaintiff that Franciscan needed to communicate with her health care provider to determine "which essential functions they believe are affected by the condition" and "what accommodations they believe would assist with meeting the essential functions." (Ex. D, Lackman Decl. ¶9, Tab 6)  Plaintiff responded that "[t]he job funcrionsare [*sic*] not necessarily the issue it is working with Trina. Jennifer. Sheila." (*Id.*)  In her deposition testimony, Plaintiff confirmed that the purpose of her night shift accommodation request was to "get away from specific people." (Ex. A, Pl. Depo. 130:17-24)

In *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 W'n. 2d 233, 237 (Wash. 2001) (en banc), the Supreme Court of Washington addressed a strikingly similar WLAD claim in which an employee claimed she had developed PTSD as a result of her interactions with her supervisor and could no longer work under that supervisor.  The court noted that, like Plaintiff here:

> Snyder claims she could continue to perform the essential functions of her position so long as she did not have to report to Ms. Hall.  However if Snyder can perform the job, then she has no disability requiring accommodation simply because she has a personality conflict with her supervisor.

*Id.* at 241.  Accordingly, the court held that an employer carries "no duty under WLAD to reasonably accommodate an employee's disability by providing her with a new supervisor." *Id.* at 242; *accord Blackman*, 2020 WL 3105089, at *11 ("An interpersonal conflict that causes employee stress is not required to be accommodated under WLAD.").

Federal courts applying the ADA have reached the same result.  In *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 578 (3d Cir. 1998), the Third Circuit addressed the claim of an employee with depression and anxiety disorders who contended that working with a certain co-worker heightened his stress level, and requested a transfer.  The court held that the employee's "request to be transferred away from individuals causing him prolonged and inordinate stress **was**

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20
(Case No.: 3:19-cv-05610-MAT)

**unreasonable as a matter of law** under the ADA." *Id.* at 579 (emphasis added). *See also Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) (affirming grant of summary judgment because "Weiler's claim amounts to a charge that she is only unable to work if Skorupka is her boss. . . . If Weiler can do the same job for another supervisor, she can do the job, and does not qualify under the ADA."). Other district courts within the Ninth Circuit have adopted this reasoning. *See Roberts v. Kaiser Found. Hosp.*, 2:12-cv-2506, 2015 WL 545999, at *7 (E.D. Cal. Feb. 10, 2015), *aff'd sub nom*, 690 Fed. Appx. 535 (9th Cir. 2017)[5] ("the great majority of courts, both within the Ninth Circuit and elsewhere, have held that employers are not required to provide an employee with a different supervisor as an accommodation as a matter of law") (collecting cases). The EEOC agrees. *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA*, October 17, 2002[6] ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation.").

Accordingly, Plaintiff's request for the accommodation of a shift change solely to avoid supervisors with whom she had interpersonal conflicts, and not to enable her to perform the essential functions of her job, was unreasonable as a matter of law, and Franciscan is entitled to summary judgment on Counts I and II.

E.     <u>Plaintiff Admitted Any Harassment Was Not Based On Her Alleged PTSD Disability.</u>

To the extent Counts I and II assert harassment claims based on Plaintiff's PTSD, Plaintiff can present no competent evidence that any harassment was motivated by her condition.

---

[5] Although not a precedential decision, the Ninth Circuit in *Roberts v. Permanente Med. Group*, 690 Fed. Appx. 535, 536 (9th Cir. 2017), agreed that a request for a new supervisor was "per se unreasonable."

[6] *Available at*, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21
(Case No.: 3:19-cv-05610-MAT)

Instead, she admitted in her deposition testimony that the events that she (erroneously) claims were harassment long predated her August 29, 2018 diagnosis with PTSD or her November 27, 2018 disclosure of that diagnosis to Franciscan.

When asked about the basis for her harassment claims in her deposition, Plaintiff identified a scattershot of alleged actions by various individuals with no apparent connection to any PTSD condition, including:

- Kasemeier and Castellanos "would constantly refuse me to take breaks to pump for my nursing newborn, and breaks to eat or use the bathroom when I was leaking breast milk, or bleeding, and refused to allow me to eat and refused any breaks whatsoever." (Ex. A, Pl. Depo.240:20-25)

- Kasemeier and Castellanos "would frequently talk down and bad about me in front of other co-workers and patients in the hospital." (Ex. A, Pl. Depo. 243:1-5)

- Beard and Holycross "would constantly harass me about wanting my position, getting angry that I wouldn't give it to him and switch, back me in the corner" and "would bad mouth me." (Ex. A, Pl. Depo. 246:6-12)

- Niven would "believe the lies, make up lies, go fishing for stories in the lab, talk to people about – about me negatively;[7] yell at me about scrub policies, but no one else; constantly call me into meetings; refused to listen to my side of any story, ever." (Ex. A, Pl. Depo.248:4-14)

Plaintiff confirmed that the above allegations were "all of the behaviors of anyone at St. Anthony that you believe were motivated by your PTSD and were either discriminatory or harassing towards you." (Ex. A, Pl. Depo.249:21-25)

Plaintiff admitted that all of these actions predated her PTSD diagnosis and disclosure. Plaintiff testified Kasemeier's and Castellanos's alleged denials of breaks began "the weekend I came back from maternity leave," in May 2018. (Ex. A, Pl. Depo.241:1-6) She also claimed

---

[7] However, Plaintiff could not identify even a single negative statement that Niven had made about her. Pl. Dep. at 249:5-10.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22
(Case No.: 3:19-cv-05610-MAT)

that Kasemeier's and Castellanos's alleged "[v]indictive retaliation" "started after Sheila Niven started in the department" in February 2018.  (Ex. A, Pl. Depo.241:23-242:1, 243:9-13, "And then the second I came back from maternity leave, with Sheila, everything flipped.")  These events predated her PTSD by months.  Plaintiff also agreed that Kasemeier's and Castellanos's alleged talking down to her began "well before you were diagnosed with PTSD."  (Ex. A, Pl. Depo. 243:18-22)  Similarly, the conduct engaged in by Beard began "[r]ight after I got back from maternity leave," again in May 2018.  (Ex. A, Pl. Depo.246:13-15)  Finally, Niven's alleged actions, such as coaching Plaintiff for her violation of Franciscan's uniform policy (May 2018) or calling Plaintiff to meetings to discuss her performance (August 14, 2018), also predated the PTSD diagnosis and disclosure.  (Ex. A, Pl. Depo. 248:20-22, agreeing that "it started well before you were diagnosed with PTSD")

Plaintiff admitted that other employees who did not have PTSD or any other disability were treated in the same manner as Plaintiff by the same persons.  Plaintiff identified three other employees – Lindsey Haines, Mary Frantz, and Tress Renfroe – who were treated the same way as Plaintiff.  (Ex. A, Pl. Depo. 244:13-16)  None of these individuals had a known disability. (Ex. A, Pl. Depo. 244:24-245:7)

In a candid moment, when asked for the basis for her belief that her alleged harassment was motivated because of her PTSD condition, Plaintiff answered:

> **I don't know**.  The only thing I can respond to is it was a vindictive behavior. They were trying to get me fired, making up lies constantly, running back to complain.  **I don't know what motivated them**.  Sheila trying to fire me?  That's – **they've done this to other people**.  Motivation is vindictive, evil, cruel.

(Ex. A, Pl. Depo. 243:23-244:9, emphasis added)

By her own admission and deposition testimony, Plaintiff cannot meet the essential element of her ADA and WLAD claims to show a causal connection between her stated

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23
(Case No.: 3:19-cv-05610-MAT)

disability of PTSD and any alleged harassment.  For her WLAD claim, Plaintiff must prove that any harassment she suffered "was because of the disability."  *Robel v. Roundup Corp.*, 148 W'n. 2d 35, 45 (2002) (en banc).  This element requires Plaintiff to show that "the disability of the plaintiff-employee [was] the motivating factor for the unlawful discrimination" and "requires a nexus between the specific harassing conduct and the particular injury or disability."  *Id*. at 46. Plaintiff must prove the same causal connection to succeed on her ADA claim.  *Linder v. Potter*, CV-05-0062, 2009 WL 2595552, at *12 (E.D. Wash. Aug. 18, 2009).

Plaintiff does not offer any "nexus" between her PTSD and the alleged harassment.  She does not allege that anyone at Franciscan made express statements of animus about her condition.  Quite the opposite, Franciscan accommodated Plaintiff's request for FMLA leave and responded to her PTSD accommodation request in good faith, with Plaintiff's actions being the sole cause for the breakdown in the interactive process.  None of the conduct Plaintiff alleges has any connection to her PTSD.  Indeed, given that all of the alleged conduct began ***prior*** to her diagnosis or disclosure of the condition, Plaintiff's PTSD by definition could not have motivated the conduct.  *See Giudice v. Red Robin Int'l, Inc.*, 555 Fed. Appx. 67, 69 (2d Cir. 2014) (affirming summary judgment because where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *Wynes v. Kaiser Permanente Hosps.*, 936 F. Supp. 2d 1171, 1186 n.11 (E.D. Cal. 2013) ("Because the alleged acts of 'harassment' predate Plaintiff's 2008-2009 leave of absence, they could not be caused by Plaintiff taking that medical leave of absence.").  Any possibility of causation is also eliminated by the fact that Plaintiff admits the same alleged harassers treated multiple non-disabled employees the same way they treated Plaintiff.  Because no reasonable

trier of fact could find that the alleged harassment was based on Plaintiff's PTSD, Franciscan is entitled to summary judgment on Plaintiff's harassment allegations in Counts I and II.

      F.     <u>There is No Dispute of Fact Plaintiff Received All of the Pregnancy Accommodations She Requested.</u>

Plaintiff's Count III asserts a claim under WPAL for the alleged denial of the reasonable accommodations of "schedule or assignment changes" for Plaintiff's pregnancy.  ECF No. 1 at ¶ 6.5.  Franciscan is entitled to summary judgment on this claim because it is undisputed that (i) Franciscan provided Plaintiff her requested scheduling accommodation, and (ii) Plaintiff did not request a position change as a reasonable accommodation for her pregnancy or provide a medical certification supporting any request.

Franciscan provided Plaintiff her requested schedule change.  On February 14, 2018, Plaintiff provided Franciscan with a note from her health care provider stating that "[i]t is our recommendation that pt does not work more than eight hours shift per day."  (Ex. A, Pl. Depo. 116:11-15, Depo. Ex. 9)  At her deposition, Plaintiff agreed that after she submitted the note, "your schedule changed, and you were scheduled for eight-hour shifts."  (Ex. A, Pl. Depo. 118:15-18)  Accordingly, there is no dispute of fact that Franciscan ***did not*** "fail or refuse to make reasonable accommodation" for Plaintiff with respect to her schedule change.

Franciscan is also entitled to summary judgment on Plaintiff's claim regarding accommodations and the HUC position.  Plaintiff first inquired about working as an HUC on November 17, 2017 in an email to Jennifer Barfield, but asked only "Could I pick up HUC shifts?"  (Ex. B, Barfield Decl., ¶ 5, Tab 1)  This was not a request for a *transfer* to a *different* position, but to work *additional* shifts beyond her existing ED Tech schedule.  (*See* Exhibit F, Interrogatory Answer No. 8, Plaintiff claims damages for "missed overtime pay for HUC positions.")  In *Hunter v. Home Depot U.S.A., Inc.*, 270 Fed. Appx. 654, 655 (9th Cir. 2008), the

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

Ninth Circuit affirmed summary judgment on an ADA reasonable accommodation claim, where the employee's "requests for a fixed 32-34 hour per week schedule stemmed from her desire to maximize her income without affecting her social security disability benefits" because "seeking to work more hours for financial reasons" did "not constitute a request for a reasonable accommodation." The same result follows here.

Plaintiff claims she was told to produce a doctor's note supporting the requested accommodations, as expressly permitted by WPAL. Rev. Code Wash. Ann. § 43.10.005(3); Wash. Admin. Code § 357-26-045 ("the employee may be required to submit written certification from their licensed physician or health care professional for those pregnancy accommodations"). Plaintiff's February 14, 2018, doctor's note only addressed limiting Plaintiff's shifts to eight hours. It in no way addresses tasks performed in her role, much less that she be transferred to an HUC position. Indeed, Plaintiff admitted in her deposition that she never provided any doctor's note with respect to an HUC position. (Ex. A, Pl. Depo. 238:8-14) Accordingly, Franciscan is also entitled to summary judgment based on Plaintiff's undisputed failure to provide any medical certification regarding the alleged need for an HUC position.

Although Plaintiff references lactation breaks in her Complaint, those breaks are not alleged in Count III as a pregnancy accommodation for which she is seeking relief through her WPAL claim. In Paragraph 6.5 of her Complaint, Plaintiff defines the scope of her WPAL claims as follows: "Plaintiff reasonably believed that she had been subjected to discrimination by retaliation and harassment when she was refused reasonable accommodations for schedule or assignment changes when similarly situated employees were provided them."[8] (ECF No. 1 at ¶

---

[8] Similarly, the WPAL claim cannot include the allegations supporting her PTSD harassment claim because it is pled solely as an accommodations-based claim. To the extent it does,

6.5); *see Moody v. Cty. of San Mateo*, 405 Fed. Appx. 250, 252 (9th Cir. 2010) (scope of claim defined by allegations of complaint).  To the extent breaks are part of her claim, Plaintiff cannot pursue a claim for lactation breaks because WPAL was not amended to require lactation-related accommodations until ***after*** Plaintiff stopped performing work for Franciscan.  Since July 28, 2019, WPAL has defined "pregnancy" to include "the need to express breast milk" and required employers to provide "reasonable break time for an employee to express breast milk for two years after the child's birth."  Rev. Code Wash. Ann. § 43.10.005(1)(b) and (1)(c)(viii).  Prior to July 28, 2019, WPAL's definition of "pregnancy" did not include the expression of breast milk and WPAL required no lactation accommodations.  (Ex. G, An Act Relating to providing reasonable accommodation for the expression of breast milk in the workplace, 2019 Wash. Legis. Serv. Ch. 134 (S.H.B. No. 1930)).  This amendment to WPAL "is presumed to be an amendment that changes a law rather than a clarification of the existing law."  *Headspace Int'l LLC v. Podworks Corp.*, 5 W'n. App. 2d 883, 896 (2018); *also State v. Greenwood*, 120 W'n. 2d 585, 592-93 (1993) ("When interpreting an amendment, a material change in the language of the original act is presumed to indicate a change in legal rights.").  In addition, statutory amendments are also presumed to have prospective, rather than retroactive, application.  *Houk v. Best Dev. & Const. Co., Inc.*, 179 W'n. App. 908, 911 (2014).  It is undisputed that Plaintiff did not perform any work for Franciscan after June 7, 2019, (Ex. A, Pl. Depo.17:3-5) and thus could not have been denied any lactation break after the July 28, 2019 WPAL amendment went into effect.

Franciscan is entitled to summary judgment because: (1) all of the events in question occurred after Plaintiff returned from maternity leave when she was no longer pregnant, (2) Franciscan had legitimate, non-discriminatory bases for its disciplinary actions, such as Plaintiff's failure to comply with policies (scrubs, new hire requirements) and failure to perform in accordance with her manager's legitimate expectations, and (3) Plaintiff admitted that others who were not pregnant were also "bullied and retaliated and treated horribly."  (Ex. A, Pl. Depo. at 187:7-24)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27
(Case No.: 3:19-cv-05610-MAT)

G.      Plaintiff's Negligent Supervision and Training Claim Does Not Present Actions
        Outside the Scope of Any Franciscan Employee's Employment.

Finally, Franciscan is entitled to summary judgment on Plaintiff's negligent supervision

and training claim in Count IV of her Complaint because this claim is based on acts within the

scope of employment of the Franciscan employees in question.

A proper negligent supervision or training claim imposes liability on an employer "for

conduct of an employee committed outside the scope of employment." *Peck v. Siau*, 65 W'n.

App. 285, 294 (1992).  Accordingly, this Court has dismissed or granted summary judgment on

negligent supervision and training claims where the employee's alleged injury is being

disciplined by an allegedly improperly trained or supervised manager.  *McDaniels v. Group

Health Co-op.*, 57 F. Supp. 3d 1300, 1317 (W.D. Wash. 2014) (granting summary judgment

where plaintiff "base[d] her negligent supervision claim on the theory that Group Health failed to

adequately train Ms. Wood, and as a result Ms. Wood disciplined Ms. McDaniels in an allegedly

discriminatory manner").  In *Johnson v. Boeing Co.*, C17-0706, 2017 WL 5458404, at *4 (W.D.

Wash. Nov. 13, 2017), this Court dismissed a negligent supervision and retention claim because:

> Plaintiff has not alleged that Wiley assaulted him in the workplace, stole his
> wallet from his office, or otherwise engaged in some wrongful conduct that was
> unrelated to her employment.  Rather, he alleges that Wiley made use of an
> employer-provided complaint and investigation process to resolve a conflict with
> her supervisor. . . .  The issue is not whether Wiley's alleged conduct was
> wrongful, however, but whether it was within the scope of her employment.  The
> forklift operator who recklessly injures a co-worker was not being paid to be
> reckless, but she was still acting within the scope of her duties with a tool
> provided by the employer on the employer's premises in furtherance of the
> employer's business.

Plaintiff alleges a variety of actions by Franciscan employees as the subject of her claim

– most of which involve the person's alleged failure to understand Franciscan's policies as well

as Plaintiff believes she understands them – but the common denominator is that all of the

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28
(Case No.: 3:19-cv-05610-MAT)

actions involve an employee's performance of his or her job.  Plaintiff claims that Franciscan's Security manager and several unnamed employees in the Security department did not have proper training on Franciscan's policies regarding "suicidal elopement patients, policies on calling 911, policies on what to do in those situations and who takes control when a suicide patient, Code Gray, is called," (Ex. A, Pl. Depo. 252:11-16) but addressing such situations is squarely within the scope of a hospital security employee's employment.  Similarly, Plaintiff claims that Human Resources employees Lackman and Georgette "don't know what policies they have, what they can and cannot give out, and how to find their policies and give them to employees that ask for them," (Ex. A, Pl. Depo. 254:9-13) but implementing personnel policies is again within the scope of a human resources employee's employment.  Plaintiff claimed her supervisors, Kasemeier and Castellanos, "didn't allow proper breaks" would change payroll logs in the Kronos timekeeping system, and favored a male ED Tech in their supervision, (Ex. A, Pl. Depo. 255:8-19) but these are all supervisory responsibilities assigned to Kasemeier and Castellanos by Franciscan.  Finally, Plaintiff claims that Niven didn't know Franciscan's policies, wrongfully suspended Plaintiff for failing to comply with a policy, and yelled at Plaintiff, (Ex. A, Pl. Depo. 256:19-257:2, 258:15-18) and Barfield refused to provide Plaintiff with reasonable accommodations, (Ex. A, Pl. Depo. 258:22-259:13), but these claims also concern the allegedly negligent performance of job responsibilities.

Plaintiff's claim boils down to allegations that various employees were not adequately trained on Franciscan's policies or performed their jobs in a manner Plaintiff contends was harmful to her.  That is not a proper negligent supervision or training claim.  Because Plaintiff's claim does not involve "wrongful conduct that was unrelated to [any person's] employment," Franciscan is entitled to summary judgment. *Johnson* 2017 WL 5458404, at *4.

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

**V.      CONCLUSION**

For the foregoing reasons, Franciscan respectfully requests that the Court grant summary judgment in its favor on each claim in Plaintiff's Complaint.

Dated this 16th day of November, 2020.


POLSINELLI PC

By: */s/ Karen K. Cain*
    Karen K. Cain
    (*Admitted pro hac vice*)
    Anne B. Hucker
    (*Admitted pro hac vice*)
    900 W. 48th Place, Suite 900
    Kansas City, MO 64112
    Telephone:  (816) 753-1000
    Facsimile:  (816) 753-1536
    kcain@polsinelli.com
    ahucker@polsinelli.com

    Jessica M. Andrade, WSBA #39297
    1000 2nd Avenue, Suite 3500
    Seattle, WA 98104
    Telephone: (206) 393-5400
    Facsimile:  (206) 393-5401
    jessica.andrade@polsinelli.com

    *ATTORNEYS FOR DEFENDANT CATHOLIC*
    *HEALTH INITIATIVES, ST. ANTHONY HOSPITAL*

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on the date given below, I electronically filed the foregoing

3

Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF

4

system which will send electronic notification of such filing to the following persons:

5

Chalmers Johnson
Longshot Law, Inc.

6

P.O. Box 1575
Port Orchard, Washington 98366

7

Phone: 425-999-0900
Email: chalmersjohnson@gmail.com

8

9

ATTORNEY FOR PLAINTIFF

10

DATED this 16th day of November 2020.

11

12

*/s/ Karen K. Cain*
Attorney for Defendant

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31
(Case No.: 3:19-cv-05610-MAT)